

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| UNITED STATES OF AMERICA | : CRIMINAL NO. 4:22-CR-_____ (CDL) |
|---|---|
| | : |
| v. | : VIOLATIONS: |
| | :     18 U.S.C. § 2 |
| | :     18 U.S.C. § 4 |
| | :     18 U.S.C. § 1343 |
| GEORGE IAKOVOU and | :     18 U.S.C. § 1349 |
| PENELOPE ZBRAVOS, | :     18 U.S.C. § 1957 |
| | :     18 U.S.C. § 981(a)(1)(C) |
| | :     18 U.S.C. § 982(a)(1) |
| Defendants. | :     28 U.S.C. § 2461(c) |
| | : |
| | : |

**THE GRAND JURY CHARGES:**

## INTRODUCTION

At all times material to this indictment:

1. According to its own materials, Vika Ventures LLC ("Vika") was a boutique venture capital firm that specialized in the private equity market and in pre-initial public offering (IPO) investments. Pre-IPO investments are investments in shares of private companies before those companies become listed on a public stock market exchange, i.e., "goes public".

2. Vika was headquartered in New York, New York.

3. Defendant George Iakovou (herein after "Iakovou") was the Chief Executive Officer of Vika.

4. Defendant Penelope Zbravos (herein after "Zbravos") was the Finance Manager of Vika.

5. Certain contract conditions in IPO agreements prevent company insiders including founders, employees, their family, and venture capitalists, from selling their shares for a set period of time, usually six months, after the company goes public. This period of time is also known as a lock-up period.

6. Vika received investment funds from customers for pre-IPO shares of specific companies. Once the private company went public, and the six-month lock-up period expired, Vika was to deliver the shares to investors.

7. For example, Vika offered investments in the following companies:

   a. Palantir—which went public on September 30, 2020, and the six-month lock-up period expired on March 31, 2021;

   b. Airbnb—which went public on December 9, 2020, and the six-month lock-up period expired on June 9, 2021;

   c. Coupang—which went public on March 11, 2021, and the six-month lock-up period expired on September 11, 2021;

   d. Stripe—which, as of the date this indictment, has not gone public but was anticipated to go public in 2021 and then in 2022; and

   e. SpaceX—which, as of the date this indictment, has not gone public and it is uncertain when SpaceX will have its IPO.

8. G.D., a victim-investor whose identity is known to the Grand Jury, resided in Columbus, Georgia.

9. R.A., a victim-investor whose identity is known to the Grand Jury, resided in Columbus, Georgia.

## SCHEME AND ARTIFICE TO DEFRAUD

10. From on or about December 2019 to on or about December 30, 2021, the exact dates being unknown to the Grand Jury, the defendant, Iakovou, and others known and unknown to the Grand Jury, devised and intended to devise a scheme and artifice to defraud victim-investors and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises.

## MANNER AND MEANS

It was part of the scheme that:

11. Iakovou would communicate via phone or email to victim-investors that he had access to shares in specific private companies at a particular price per share.

12. Victim-investors who wanted to purchase pre-IPO shares through Vika received an email from Iakovou which included false and fraudulent documentation pertaining to the price of shares, company profiles, and Vika subscription agreements for victim-investors to review, sign, and return.

13. Iakovou did not have the ability to obtain the pre-IPO shares he advertised to his victim-investors.

14. Iakovou emailed instructions for victim-investors to send their investment monies to a Vika bank account, Account Number: XXXXX8288, at JP Morgan Chase Bank located in New York, New York (Investor Account).

15. Upon receipt of funds from victim-investors by electronic transfer, check, or interstate wires, Iakovou generally sent a confirmation email with a fraudulent Buy Confirmation Letter which falsely confirmed that the victim-investor's funds had been

applied to an investment in a number of shares in the chosen private company.

16. Iakovou and Vika did not purchase or deliver shares of the specific companies to the victim-investors.

17. The funds from victim-investors were transferred to personal bank accounts and converted to the personal use of Iakovou and others known and unknown to the Grand Jury.

18. Iakovou, and others known and unknown to the Grand Jury, forged and presented fake and fraudulent documentation including proof of funds and stock purchase agreements, to and from various businesses, including private market brokerage firms and financial institutions.

## COUNT ONE
### (Conspiracy to Commit Wire Fraud)

19. The factual allegations contained in Paragraphs 1-18 of this indictment are re-alleged and incorporated herein as if copied verbatim.

20. From on or about December 2019, and continuing to on or about December 30, 2021, the exact dates being unknown to the Grand Jury, in the Middle District of Georgia, and elsewhere within the jurisdiction of the court, the defendant,

**GEORGE IAKOVOU**

and others, both known and unknown to the Grand Jury, did knowingly and willfully conspire and agree with each other to commit wire fraud in violation of Title 18, United States Code, Sections 1343 and 2, that is to devise, and intend to devise, a scheme and artifice to defraud victim-investors, and to obtain money and property by means of

4

material false and fraudulent pretenses, representations, and promises, and to transmit and cause to be transmitted, and aid and abet the transmissions, by means of wire communications in interstate commerce, of writing, signs, signals, pictures, and sounds for the purpose of executing said scheme and artifice; all in violation of Title 18, United States Code, Section 1349.

## COUNT TWO THROUGH EIGHTEEN
(Wire Fraud)

21. The factual allegations contained in Paragraphs 1-18 of this indictment are re-alleged and incorporated herein as if copied verbatim.

22. On or about each of the dates set forth below, in the Middle District of Georgia, and elsewhere within the jurisdiction of the Court, the defendant,

**GEORGE IAKOVOU,**

for the purpose of executing the scheme described above, transmitted and caused to be transmitted by means of wire communication in interstate commerce the signals and sounds described below for each count, each transmission constituting a separate count:

| COUNT | DATE OF OFFENSE | WIRE COMMUNICATION |
|---|---|---|
| 2 | 11/30/2020 | An email sent from Iakovou to victim-investor, G.D., pertaining to the purchase of pre-IPO shares. |
| 3 | 12/9/2020 | Wire transfer of $35,000 from victim-investor, G.D. to Vika's Investor Account |
| 4 | 12/12/2020 | An email sent from Iakovou to victim-investor, G.D. containing a false buy confirmation letter |
| 5 | 01/12/2021 | Wire transfer of $100,000 from victim-investor, G.D. to the Investor Account |
| 6 | 01/12/2021 | Wire transfer of $31,250 from victim-investor, G.D. to the Investor Account |

| 7 | 02/04/2021 | Wire transfer of $40,000 from victim-investor, G.D. to the Investor Account |
|---|---|---|
| 8 | 02/09/2021 | Emails from Iakovou to victim-investor, R.A., which contained fraudulent subscription documents and stated falsely that Iakovou had pre-IPO shares available. |
| 9 | 02/10/2021 | Wire transfer of $40,000 from victim-investor, R.A., to the Investor Account |
| 10 | 02/11/2021 | An email sent from Iakovou to victim-investor, R.A., confirming receipt of wire for the alleged purchase of shares. |
| 11 | 02/15/2021 | An email sent from Iakovou to victim-investor, R.A., falsely stating Iakovou had more shares available |
| 12 | 02/17/2021 | Wire transfer of $30,000 from R.A. to Investor Account |
| 13 | 02/18/2021 | A fraudulent email sent from Iakovou to victim-investor, R.A., pertaining to Vika working with Salesforce to create a user portal for R.A. to view R.A.'s shares |
| 14 | 03/02/2021 | An email from victim-investor, G.D., to Iakovou which stated G.D's desire to buy additional pre-IPO shares after a phone call with Iakovou |
| 15 | 03/03/2021 | Wire transfer of $69,000 from victim-investor, G.D., to Investor Account |
| 16 | 03/26/2021 | An email sent from Iakovou to G.D. which confirmed receipt of March 3, 2021 wire and contained fraudulent buy confirmation letters for Stripe, SpaceX, and Coupang |
| 17 | 03/29/2021 | Wire transfer of $3,750 from victim investor, G.D. to the Investor Account |
| 18 | 03/31/2021 | An online Bill Pay transfer of $20,000 from victim-investor, R.A., to Iakovou |

All in violation of Title 18, United States Code, Section 1343.

6

## COUNT NINETEEN
### (Engaging in Monetary Transaction Involving Criminally Derived Property)

On or about February 24, 2021, in the Middle District of Georgia and elsewhere,

**GEORGE IAKOVOU,**

defendant, did knowingly engage and attempt to engage in a monetary transaction by, through, and to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, that is he transferred $135,528.10 of U.S. currency from his bank account to Manassas Automotive LLC in Miami, Florida for the purchase of a 2021 Corvette Stingray, such property having been derived from a specified unlawful activity, that is, wire fraud in violation of Title 18, United States Code Section 1343; all in violation of Title 18, United States Code, Section 1957.

## COUNT TWENTY
### (Engaging in Monetary Transaction Involving Criminally Derived Property)

On or about March 21, 2021, in the Middle District of Georgia and elsewhere,

**GEORGE IAKOVOU,**

defendant, did knowingly engage and attempt to engage in a monetary transaction by, through, and to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, that is, he transferred $231,799.23 of U.S. currency from his bank account to Watches of Switzerland Group for the purchase of a luxury watch, such property having been derived from a specified unlawful activity, that is, wire fraud in violation of Title 18, United States Code Section

1343; all in violation of Title 18, United States Code, Section 1957.

## COUNT TWENTY-ONE
### (Misprision of a Felony)

Between on or about May 27, 2021, and June 4, 2021, in the Middle District of Georgia and elsewhere, the defendant,

**PENELOPE ZBRAVOS,**

having knowledge of the actual commission of a felony cognizable by a court of the United States, to wit: wire fraud in violation of Title 18, United States Code, Section 1343, did conceal the same by transferring funds to bank accounts in her and Iakovou's name, resigning from her role at Vika, and removing herself as signor to Vika bank accounts, and did not as soon as possible make known the same to some judge or other person in civil or military authority under the United States, in violation of Title 18, United States Code, Section 4.

## FORFEITURE NOTICE
### (18 U.S.C. § 981(a)(1)(C), 18 U.S.C. § 982(a)(1) and 28 U.S.C. § 2461(c) – Criminal Forfeiture)

1.  The factual allegations contained in Paragraphs 1-18, and the allegations contained in Counts One through Twenty of this Indictment are hereby re-alleged and incorporated by reference into this Notice for the purpose of alleging forfeiture to the United States of America, pursuant to the provisions of Title 18, United States Code, Section 981(a)(1)(C), Title 18, United States Code, Section 982(a)(1), and Title 28, United States Code, Section 2461(c).

2. Upon conviction of the offense(s) in violation of Title 18, United States Code, Section 1349, in connection with Title 18, United States Code, Section 1343 set forth in Count One; and/or Title 18, United States Code, Section 1343 set forth in Counts Two through Eighteen; and/or Title 18, United States Code, Section 1957 set forth in Counts Nineteen and Twenty of the Indictment, the defendant,

### GEORGE IAKOVOU,

shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense(s), or a conspiracy to commit such offense(s); and/or any property, real or personal, involved in such offense(s), or any property traceable to such property, pursuant to Title 18, United States Code, Section 982(a)(1), including, but not limited to, a personal money judgment in an amount to be determined.

3. If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third person;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be subdivided without difficulty;

the United States of America shall be entitled to forfeiture of substitute property pursuant

to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c), through Title 18, United States Code, Section 981(a)(1)(C).

All pursuant to 18 U.S.C. § 981(a)(1)(C), 18 U.S.C. § 982 and 28 U.S.C. § 2461(c).

A TRUE BILL

*s/Foreperson of the Grand Jury*
FOREPERSON OF THE GRAND JURY

PETER D. LEARY
UNITED STATES ATTORNEY

Presented by:

_____
CHRISTOPHER WILLIAMS
ASSISTANT UNITED STATES ATTORNEY

Filed in open court this  9  day of November, 2022.

_____
Deputy Clerk

11